# lN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 29, 2013

No. 12-30457

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

THAD C. THEALL; THERESA THEALL,

Defendants - Appellants

Appeals from the United States District Court
for the Western District of Louisiana
USDC No. 6:09-CR-122-1

Before DeMOSS, DENNIS, and PRADO, Circuit Judges.

PER CURIAM:[*]

Thad Theall and his wife Theresa Theall were charged with two counts of bankruptcy fraud under 18 U.S.C. § 152 based on misrepresentations they made when they filed for personal bankruptcy in June 2005. A jury convicted Theresa on the first count and convicted Thad on both counts. On appeal they argue that there was insufficient evidence to support their convictions and that the district court erred in admitting certain evidence at their trial. Thad also challenges the portion of his sentence requiring him to pay $50,000 in restitution to the

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-30457

bankruptcy estate. We affirm in all respects except for the amount of the restitution order.

## I.

In the years before the 2005 bankruptcy proceeding at issue in this case, Thad and Theresa jointly owned two businesses, a construction company named Acadiana Patio Systems ("Acadiana") and a property leasing company named Thad's Rentals. In 2004 Acadiana filed for bankruptcy and was liquidated, which caused Thad and Theresa to begin selling their personal assets. One such asset was the building that formerly housed Acadiana, located on Ambassador Caffery Parkway in Lafayette, Louisiana (the "Ambassador building"). On February 3, 2005, the Thealls sold the Ambassador building for $100,000. As payment, they accepted $85,000 in cash and a $15,000 promissory note payable in one year. After deducting the costs associated with the sale, the Thealls netted $79,000 in cash. A check for that amount was deposited into Thad's personal checking account at Gulf Coast Bank on February 4, 2005. Prior to that deposit, there was approximately $1,500 in that account.

According to bank records introduced at trial, the Thealls spent the $79,000 from the sale of the Ambassador building very quickly. For example, on February 5, 2005 a check for $32,000 from Thad's personal checking account was written to the Thealls' other company, Thad's Rentals. On February 7, 2005, a check for $4,000 was written to Theresa with a note in the memo line stating "VISA balance and Sarah's graduation." On February 8, 2005, a check for $9,335 was used to repay a loan at the Bank of Abbeville. On February 9, 2005, a check for $13,000 cleared Thad's account payable to the seller of the Thealls' mobile home. The same day a $5,000 check payable to Cypress Bayou Casino ("Cypress Bayou") cleared Thad's account. Another check to Cypress Bayou for $5,000 cleared the next day. All said, the Thealls spent the $79,000 in cash proceeds

2

from the sale of the Ambassador building during the 10-day period between February 4, 2005 and February 14, 2005.

Thad and Theresa filed for personal bankruptcy on June 16, 2005, roughly four months after they sold the Ambassador building. They were represented by bankruptcy attorney John Weinstein. They failed to disclose the sale of the Ambassador building on the "Statement of Financial Affairs" portion of their bankruptcy petition, which requires debtors to list all property transferred within one year of filing for bankruptcy. They also failed to disclose the $15,000 promissory note that they still held from the building sale, which should have been listed in the "Schedule B. Personal Property" section of the bankruptcy petition. Schedule B requires bankruptcy debtors to list all of their personal property, including any "negotiable and nonnegotiable instruments" and "[o]ther personal property of any kind not already listed."

Elizabeth Andrus was appointed trustee over the Thealls' bankruptcy case. On June 28, 2005, she sent notice to the Thealls' creditors that the initial meeting of the creditors would be held on August 4, 2005. At that meeting, the Thealls were to be examined under oath regarding the documents they filed in connection with their bankruptcy petition.

In July 2005, roughly a month after filing for bankruptcy, Thad contacted the buyer of the Ambassador building and asked whether he would pay the $15,000 promissory note early. Thad agreed to accept the reduced sum of $11,250 in satisfaction of the debt and received a check for that amount on July 27, 2005. That check was not deposited into one of the Thealls' accounts, but rather was endorsed over to Theresa's parents to repay a $5,000 loan. Theresa's parents then wrote Theresa a check for $6,250 with a note stating "bal on check" on the check's memo line. On the morning of August 4, 2005, the same day as the initial creditors meeting, Theresa used the $6,250 check to purchase money orders at a local bank.

3

No. 12-30457

The initial meeting of the creditors began at approximately 10:30 a.m. on August 4, 2005. In attendance were the Thealls, the bankruptcy trustee, an attorney from Mr. Weinstein's office, William and Karen Racca, and their attorney, Mr. Debaillon. The Raccas were creditors who were attempting to recover money from the Thealls based on a $100,000 investment they made in Acadiana in 2003. Under the terms of the investment deal, William Racca was to become an Acadiana employee and would be entitled to a percentage of the company's profits. He was also to receive a sales commission and have use of a company vehicle. However, Racca and Thad's relationship soured soon after Racca began working for Acadiana. Thad eventually fired Racca in June 2004, roughly a year after he started. The Raccas sued the Thealls to recover their investment money and secured a $100,000 judgment against them. The Thealls listed the $100,000 debt to the Raccas on their bankruptcy petition.

Ms. Andrus began the creditors meeting by placing Thad and Theresa under oath. She confirmed with each that they had read the bankruptcy petition and attached documents, that they were personally familiar with their contents, that all of their assets and creditors were listed, and that everything in the documents was true and complete to the best of their knowledge.

When Ms. Andrus asked the Thealls whether they had sold any assets netting $3,000 or more in the last 12 months, neither Thad nor Theresa mentioned the sale of the Ambassador building. Later in the meeting, Mr. Debaillon asked the Thealls a few questions on behalf of the Raccas. When Mr. Debaillon asked the Thealls when they sold the Ambassador building, Thad responded "I guess it was, February of last year." Mr. Debaillon asked Thad if he meant "February of 2004," and Thad responded "That's correct." When asked what he did with the money, Thad said he "paid off bills and lived."

At the end of the meeting, Ms. Andrus informed the parties that the proceedings would be held open so that the Thealls could amend their schedules

and Statement of Financial Affairs and provide additional documents. The amended schedules and Statement of Financial Affairs were filed on August 22, 2005, and they again did not disclose the sale of the Ambassador building or the $15,000 promissory note.

On July 14, 2009, Thad and Theresa Theall were each charged with two counts of bankruptcy fraud in a superseding indictment. The first count alleged that they made a false statement under penalty of perjury in relation to a bankruptcy petition in violation of 18 U.S.C. § 152(3) ("Count 1"). This count was based on the Thealls' failure to disclose the sale of the Ambassador building and the $15,000 promissory note in their bankruptcy petition. The second count alleged that they made a false oath in a bankruptcy proceeding in violation of 18 U.S.C. § 152(2) ("Count 2"). The second count was based on Thad's misrepresentation during the August 4, 2005 creditors meeting that the Ambassador building was sold in February 2004.

The Government began its case-in-chief on April 11, 2011 and finished on April 15, 2011. At the conclusion of the Government's case, both Thad and Theresa moved for a judgment of acquittal on both counts. Their motions were denied and they rested without presenting any evidence. The jury returned a guilty verdict for Thad on Counts 1 and 2 and a guilty verdict for Theresa on Count 1. Theresa was acquitted on Count 2.

On April 17, 2012, the district court sentenced Thad to twenty-seven months of imprisonment for each count, the sentences to run concurrently, followed by three years of supervised release. Thad was also ordered to pay $50,000 in restitution to the bankruptcy estate, which the district court determined to be the victim in the case. Thad objected to the court's restitution order. On May 25, 2012, Theresa was sentenced to three months of imprisonment on Count 1 followed by three years of supervised release.

No. 12-30457

## II.

On appeal, Thad and Theresa argue that the district court erred by admitting evidence at trial involving Thad's gambling activities and by denying their motions for judgment of acquittal. Thad also argues that the district court erred by ordering him to pay $50,000 in restitution to the bankruptcy estate. Theresa adopts the arguments made in Thad's brief for the issues she appeals.

## A.

Thad and Theresa filed a motion in limine before trial seeking to exclude any evidence relating to their gambling activities. They argued that evidence of their gambling activities was neither intrinsic to the charged offenses nor admissible extrinsic evidence under Federal Rule of Evidence 404(b). The district court denied the motion and admitted the following evidence at trial over the Thealls' objection: (1) William Racca's testimony (the Acadiana investor and former employee) that Thad had a gambling problem and gambled with company money; (2) FBI agent Kasee Hatcher's testimony that Thad wrote multiple checks to Cypress Bayou using money from the sale of the Ambassador building; (3) John Cox's testimony (the director of compliance at Cypress Bayou) that Thad had check cashing privileges at Cypress Bayou allowing him to cash checks at the casino for up to $5,000; and (4) Tara Trahan's testimony (a compliance specialist with Cypress Bayou) that Thad's casino player's card indicated that he gambled for three hours and lost $5,100 the day before he filed for bankruptcy.[1]

---

[1] The Thealls note that this evidence was also referenced during the Government's opening statement and closing argument. During its opening statement, the Government told the jury that the Thealls spent $10,000 of the proceeds from the building sale at Cypress Bayou casino. During closing arguments the Government told the jury that Thad lost $127,000 at Cypress Bayou in 2003 and that he gambled for three hours the day before filing for bankruptcy, which "shows you how he operates."

No. 12-30457

"This court reviews a district court's evidentiary rulings for abuse of discretion, subject to harmless-error analysis." *United States v. Meza*, 701 F.3d 411, 425 (5th Cir. 2012) (internal quotation marks and alteration omitted). "A trial court abuses its discretion when its ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence." *United States v. Jackson*, 636 F.3d 687, 692 (5th Cir. 2011) (internal quotation marks omitted). "A nonconstitutional trial error is harmless unless it had substantial and injurious effect or influence in determining the jury's verdict." *United States v. Ollison*, 555 F.3d 152, 162 (5th Cir. 2009) (internal quotation marks omitted).

The district court correctly admitted William Racca's testimony about Thad's gambling. On direct examination, the Government asked Racca about his contentious business relationship with Thad and his termination from Acadiana. The testimony was intended to show that Thad and Theresa may have concealed the sale of the Ambassador building in an attempt to avoid repaying the Raccas the money they invested in Acadiana. On cross-examination, Thad's counsel elicited testimony from Racca suggesting that he was a confrontational, disruptive employee, which was the cause of the tension between Thad and Racca and the reason he was fired. On redirect, the Government sought to counter that portrayal by asking additional questions about the animosity between Racca and Thad. Racca testified that the tension existed at least in part because he believed that Thad was gambling with company money and because he confronted Thad about the issue one day at a casino.

As the Government points out, its questions on redirect were intended to counter the defense's portrayal of Racca during cross-examination as a difficult employee who was the cause of the animosity between him and Thad. By asking about the source of the tension between Thad and Racca during cross-examination, Thad's counsel opened the door to additional questions from the Government on that subject during redirect. *See United States v. Walker*, 613

No. 12-30457

F.2d 1349, 1353 (5th Cir. 1980) ("Cross-examination with respect to part of a transaction enables the opposing party to elicit evidence on re-direct examination of the whole transaction at least to the extent that it relates to the same subject."). Accordingly, the district court did not abuse its discretion by allowing Racca's testimony. *See United States v. Barrentine*, 591 F.2d 1069, 1082 (5th Cir. 1979) ("The extent to which counteracting and rehabilitative evidence may be received after the credibility of a witness has been attacked is a matter in which a trial judge has broad discretion." (quoting *Beck v. United States*, 317 F.2d 865, 870 (5th Cir. 1963))); *see also United States v. Ebron*, 683 F.3d 105, 154 (5th Cir. 2012).

The district court also correctly admitted FBI agent Kasee Hatcher's testimony. Agent Hatcher testified about how the Thealls spent the proceeds from the sale of the Ambassador building, including that Thad used the money to write multiple checks to Cypress Bayou casino. The Thealls argue that this was "other acts" evidence that was neither intrinsic to the charged offenses nor admissible extrinsic evidence under Federal Rule of Evidence 404(b). Rule 404(b) provides in relevant part:

> (b) Crimes, Wrongs, or Other Acts.
> (1) Prohibited Uses. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
> (2) Permitted Uses; Notice in a Criminal Case. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

FED. R. EVID. 404(b).

"Rule 404(b) is only implicated when the offered evidence is extrinsic; evidence intrinsic to the charged offense does not implicate the rule." *United States v. Crawley*, 533 F.3d 349, 353–54 (5th Cir. 2008). Evidence of other acts

8

is intrinsic to the charged offense "when it is inextricably intertwined with the charged offense, when both acts are part of the same criminal episode, or when the 'other act' was a necessary preliminary step toward completion of the charged crime." *Id.* at 354. If the evidence at issue is extrinsic to the charged offense, the court employs a two-step analysis to determine whether admission of the evidence violated Rule 404(b):

> First, we determine whether extrinsic evidence is relevant to an issue other than the defendant's character, *i.e.*, motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Second, if the evidence is relevant for at least one of those permissible purposes, we then determine whether, consistent with Rule 403, the evidence possesses probative value that is not substantially outweighed by its undue prejudice.

*Id.* at 355 (internal citations, alterations, and quotation marks omitted); *see also United States v. Sumlin*, 489 F.3d 683, 690 (5th Cir. 2007).

The Thealls argue that the evidence was not intrinsic to the charged offenses because their gambling activities were not inextricably intertwined with the charged offenses, were not necessary preliminaries to the commission of the charged offenses, and were not part of the same criminal episode. They argue that the evidence was not admissible extrinsic evidence under Rule 404(b) because it was not relevant to the charged offenses and because the probative value of the evidence was substantially outweighed by its undue prejudice. According to the Thealls, how they spent their money prior to declaring bankruptcy would be relevant to the charged offenses only if the money was used in a way that enabled the bankruptcy trustee to avoid the transfer and recover the money for the bankruptcy estate. They assert that a bankruptcy trustee can avoid a transfer only (1) when money is used to pay an antecedent debt within 90 days of filing for bankruptcy as described in 11 U.S.C. § 547(b), and (2) when money is transferred to an "insider" as described in §§ 547(b) and 548(a)(1). The

No. 12-30457

Thealls contend that "[b]ecause neither of those conditions existed with regards to the money that Mr. Theall used to gamble, how that money was spent had no relevance to whether Mr. Theall 'knowingly and fraudulently' failed to disclose the sale of the building, because even if he had disclosed the sale, his gambling would have been proper and not subject to the avoidance powers of the trustee." They further argue that the probative value of the evidence was outweighed by a danger of undue prejudice because "viewpoints for and against gambling are often strong" and therefore "the risk that th[e] jury allowed irrelevant evidence of gambling to affect its judgment . . . is unacceptably high."

While we agree that evidence of how the Thealls spent the proceeds from the building sale is not intrinsic to the charged offenses, there is no question that it is admissible extrinsic evidence. Both parties acknowledge that the primary issue at trial was whether the Thealls knowingly and fraudulently failed to disclose the sale of the Ambassador building, or did so inadvertently. As noted above, showing intent or absence of mistake is a permissible use of extrinsic "other acts" evidence under Rule 404(b). Contrary to the Thealls' argument, evidence of how and when they used the proceeds from the undisclosed building sale is relevant to that question, regardless whether the bankruptcy trustee could have avoided the transactions and recovered the money for the bankruptcy estate. Evidence showing the Thealls' use of the building proceeds suggests that they were aware of the proceeds and the transaction that produced them. Evidence that the Thealls were aware of the building sale in February 2005 is certainly relevant to whether the Thealls knowingly or inadvertently failed to disclose the sale when they filed for bankruptcy roughly four months later.[2]

---

[2] Under Federal Rule of Evidence 401, evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action."

10

No. 12-30457

Nor is the probative value of the evidence substantially outweighed by a danger of undue prejudice. "A district court's determination under Rule 403 with respect to whether the probative value of evidence is substantially outweighed by the danger of unfair prejudice is reviewed . . . with an especially high level of deference to the district court, with reversal called for only rarely and only when there has been a clear abuse of discretion." *United States v. Dillon*, 532 F.3d 379, 387 (5th Cir. 2008) (internal quotation marks omitted). As the Government argues, all of the gambling evidence introduced at trial involved legal gambling activities by Thad at a licensed casino. While evidence showing Thad gambling soon before filing for bankruptcy certainly did not paint a flattering picture of his fiscal responsibility, it was not so inflammatory that its significant probative value was substantially outweighed by undue prejudice. *See United States v. Fields*, 483 F.3d 313, 354 (5th Cir. 2007) (emphasizing that Rule 403 is violated only when the danger of unfair prejudice "substantially" outweighs the probative value of the evidence).

The Thealls also challenge the district court's admission of testimony by John Cox, the director of compliance at Cypress Bayou, and Tara Trahan, a compliance specialist at Cypress Bayou. Cox testified that Thad had check cashing privileges at Cypress Bayou allowing him to cash checks at the casino for up to $5,000. Trahan testified that Thad's casino player's card indicated that he gambled for three hours and lost $5,100 the day before he filed for bankruptcy.

It is less clear how this evidence was relevant to the charged offenses. The Government argues that Cox's testimony was intended to show that Cypress Bayou did not provide lines of credit called "markers" and therefore Thad lied at a creditors meeting when he stated that checks to Cypress Bayou were written to pay off past gambling debts. However, the Government did not charge Thad based on that alleged misrepresentation and does not explain how it is relevant

11

to the misrepresentation about the date of the building sale that was the basis for Count 2. The Government also fails to explain how Thad's gambling the day before he filed for bankruptcy, which appears not to have involved proceeds from the sale of the Ambassador building, is relevant to the charged offenses.

Nevertheless, any error in admitting Cox's and Trahan's testimony was harmless and thus is not a basis for reversal. *See Ollison*, 555 F.3d at 161 ("Even if the district court errs in its evidentiary ruling, the error can be excused if it was harmless."). "A nonconstitutional trial error is harmless unless it had substantial and injurious effect or influence in determining the jury's verdict." *Id.* at 162 (internal quotation marks omitted); *see also United States v. Sanchez-Sotelo*, 8 F.3d 202, 210 (5th Cir. 1993) ("[T]o reverse a conviction, this court must find a significant possibility that the testimony had a substantial impact on the jury." (internal quotation marks omitted)). When Cox and Trahan testified, the jury had already heard properly admitted evidence that Thad had a gambling problem, gambled with Acadiana company money, and that he gambled with a significant portion of the proceeds from the sale of the Ambassador building. Cox's and Trahan's testimony that Thad had check cashing privileges at a casino and that he gambled the day before filing for bankruptcy was merely cumulative evidence of Thad's gambling proclivities. Given the substantial non-gambling evidence supporting Thad and Theresa's convictions (discussed below), and the cumulative nature of Cox's and Trahan's testimony, there is not a "significant possibility" that the evidence had a substantial impact on the jury's verdict. *See Sanchez-Sotelo*, 8 F.3d at 210; *see also United States v. Hall*, 500 F.3d 439, 444 (5th Cir. 2007) ("The erroneous introduction of cumulative evidence was harmless error."); *United States v. Mortazavi*, 702 F.2d 526, 529 (5th Cir. 1983) (holding that error from the erroneous admission of evidence was harmless in light of the overwhelming evidence of the defendant's guilt). Any error in admitting Cox's and Trahan's testimony was harmless.

No. 12-30457

B.

Thad and Theresa challenge the sufficiency of the evidence on Count 1 and Thad challenges the sufficiency of the evidence on Count 2. Because the Thealls filed motions for judgment of acquittal before the case was submitted to the jury, the court reviews their sufficiency claims de novo. *Ollison*, 555 F.3d at 158. "The standard for evaluating the sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the government, a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt." *Dillon*, 532 F.3d at 384 (internal quotation marks omitted). "All reasonable inferences must be drawn, and all credibility determinations made, in the light most favorable to the verdict." *Ollison*, 555 F.3d at 158 (internal quotation marks omitted). A review for sufficiency of the evidence is "highly deferential to the verdict, and does not depend on whether the evidence presented at trial is direct or circumstantial." *Id.* at 160 (internal citation and quotation marks omitted).

Count 1 charged Thad and Theresa with making a false statement under penalty of perjury in violation of 18 U.S.C. § 152(3), and was based on their failure to disclose the sale of the Ambassador building and the $15,000 promissory note in their bankruptcy petition. To obtain a conviction, the Government had to show that the Thealls "knowingly and fraudulently" failed to disclose that information. *See* § 152(3). Count 2 charged Thad with making a false oath in a bankruptcy proceeding in violation of 18 U.S.C. § 152(2), and was based on his misrepresentation during the August 4, 2005 creditors meeting as to when the Ambassador building was sold. As with Count 1, to obtain a conviction on Count 2 the Government had to show that Thad "knowingly and fraudulently" misrepresented the date of the building sale. *See* § 152(2).

The Thealls' sufficiency challenges on both counts involve only whether there was sufficient evidence introduced at trial to support the "knowingly and

13

No. 12-30457

fraudulently" element of the offenses. For purposes of 18 U.S.C. § 152, "[a]n act is done fraudulently if done with intent to deceive or cheat any creditor, trustee, or bankruptcy judge." *See* 5TH CIR. PATTERN JURY INSTRUCTIONS (CRIMINAL) § 2.11 (West 2012). An act is done knowingly when it "was done voluntarily and intentionally, not because of mistake or accident." *Id.* § 1.37.

With respect to Count 1, Thad and Theresa argue that the evidence presented at trial gave equal support to the defense theory that they inadvertently failed to disclose the building sale and the promissory note in their bankruptcy petition. They note that their bankruptcy attorney gave them a questionnaire in order to gather information for the bankruptcy petition, but did not follow up with them about their failure to answer questions that would have disclosed the building sale and promissory note. They also assert that the questionnaire did not specifically ask whether they had any promissory notes or negotiable instruments, and their attorney never explained what those terms meant.

As for Count 2, Thad argues that his misrepresentation at the creditors meeting was also inadvertent. He notes that when he was asked about when the Ambassador building was sold, he responded "I guess it was, February of last year." When the Raccas' attorney asked if he meant February 2004, Thad responded "That's correct." Thad points out that he stated "I guess" when answering, which he argues shows that he was guessing as to the date of the sale. He contends that when he said "that's correct" he was merely agreeing "with the incorrect statement made by an adversarial attorney." He also argues that "the phrase 'of last year' is subject to two interpretations, one being the immediately preceding February and one being the February of the previous calendar year."

The following evidence was introduced at trial in support of the Thealls' convictions: The Thealls were experienced bankruptcy filers. Thad filed for

14

personal bankruptcy in 1982 before he and Theresa were married, and again in 1991 after they were married. Thad and Theresa also filed for bankruptcy on behalf of Acadiana before they initiated the personal bankruptcy proceedings at issue in this appeal. The Thealls were represented by a bankruptcy attorney who provided them with a questionnaire used to gather information for the bankruptcy petition. The Thealls did not disclose the building sale or the $15,000 promissory note on that questionnaire, despite the fact that several questions should have prompted those disclosures. They spent the $79,000 in cash proceeds from the sale of the building roughly four months prior to filing for bankruptcy, and still held the promissory note when they filed. The Thealls redeemed the promissory note in July 2005, roughly a month after filing for bankruptcy. On August 3, 2005, the day before the creditors meeting, both Thad and Theresa signed the cancelled promissory note. On August 4, 2005, the same day as the creditors meeting, Theresa used the proceeds from the promissory note to purchase money orders at a local bank. During the creditors meeting, the Thealls confirmed that they personally reviewed their bankruptcy petition and the attached documents, were familiar with their contents, and that everything was true and complete to the best of their knowledge. When the bankruptcy trustee asked the Thealls whether they had sold any assets netting $3,000 or more in the last year, neither Thad nor Theresa mentioned the sale of the Ambassador building. On August 22, 2005 the Thealls filed amended schedules and a statement of financial affairs, which again failed to disclose the building sale and the promissory note.

The above evidence is sufficient to support Thad and Theresa's convictions on Count 1 and Thad's conviction on Count 2. Viewed in the light most favorable to the verdict, the evidence presented at trial was sufficient for a rational juror to find that Thad and Theresa knowingly and fraudulently failed to disclose the building sale and promissory note in their bankruptcy petition, and that Thad

No. 12-30457

knowingly and fraudulently misrepresented when the building was sold at the August 4, 2005 creditors meeting.

## C.

Thad also challenges the district court's restitution order. The court ordered Thad to pay $50,000 in restitution to the bankruptcy estate pursuant to the Mandatory Victims Restitution Act of 1996 ("MVRA"), 18 U.S.C. § 3663A, which requires restitution when a defendant is convicted of an "offense committed by fraud or deceit," § 3663A(c)(1)(A)(ii).[3] The amount was based on the $15,000 promissory note and the $35,000 from the proceeds of the building sale that was transferred to the Thealls' other business, Thad's Rentals. The district court found that had the Thealls disclosed the building sale, the promissory note would have been included in the bankruptcy estate and the bankruptcy trustee may have been able to recover the $35,000 for the estate. As part of the restitution order, the court recommended that Thad's bankruptcy case "be reopened and the amounts be disbursed to the creditors in the manner in which the Bankruptcy Court deems sufficient, correct, and proper, and in accordance with the law."

"Whether the law permits restitution to be imposed as part of a sentence in a particular case is reviewed de novo." *United States v. Espinoza*, 677 F.3d 730, 732 (5th Cir. 2012). If restitution is legally permissible, the propriety of a particular award is reviewed for abuse of discretion. *United States v. Ingles*, 445 F.3d 830, 839 & n.40 (5th Cir. 2006).

Thad argues that the restitution order is invalid because the bankruptcy estate does not constitute a "victim" for purposes of the MVRA. He notes that he was denied a discharge in his bankruptcy proceeding, and therefore his debts remain legally binding and his creditors remain capable of enforcing those

---

[3] Elizabeth Andrus, the trustee in the Thealls' bankruptcy proceedings, was named as the payee.

obligations using traditional collection methods. Thad argues that "[g]iven that there was no discharge, and thus there are no creditors who had their debts extinguished without full payment, there are no victims in this case."

The MVRA defines a victim as "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered." § 3663A(a)(2). According to the district court's findings, Thad's failure to disclose the sale of the Ambassador building deprived the bankruptcy estate of at least the $15,000 promissory note, which would have been used to satisfy claims by the Thealls' creditors. This constitutes direct and proximate harm resulting from Thad's offense conduct. *Cf. United States v. Waldner*, 580 F.3d 699, 709–10 (8th Cir. 2009) (affirming district court's order requiring the defendant to pay restitution to the bankruptcy estate following his conviction for bankruptcy fraud under 18 U.S.C. § 152). The fact that Thad did not receive the benefit of a bankruptcy discharge, or that his creditors are still legally capable of pursuing debts owed, does not change that the bankruptcy estate was harmed by Thad's failure to disclose the building sale. As Thad himself notes, "[t]he purpose of a restitution order is to put the victim in the same position as if the illegal activity had not occurred." *United States v. Norris*, 217 F.3d 262, 272 (5th Cir. 2000) (internal quotation marks omitted). The district court's restitution order accomplishes that purpose to the extent that it provides the bankruptcy estate with the value of the assets it would have received if the Thealls had disclosed the building sale. *Cf. United States v. Cluck*, 143 F.3d 174, 177, 180 (5th Cir 1998) (affirming a restitution order based on a conviction for bankruptcy fraud under 18 U.S.C. § 152 after the defendant's bankruptcy discharge had been revoked).

Thad also challenges the amount of the restitution order, arguing that if the bankruptcy estate does constitute a victim under the MVRA, the district court's restitution order should have been for $15,000 rather than $50,000. He

contends that his failure to disclose the sale of the Ambassador building only deprived the bankruptcy estate of the $15,000 promissory note, and therefore any restitution order must be limited to that amount.

As noted above, the $50,000 restitution order was based on the $15,000 promissory note and the $35,000 in proceeds from the building sale that the Thealls transferred to Thad's Rentals. At Thad's sentencing hearing, the district court found that if Thad had disclosed the sale, the bankruptcy estate would have obtained the $15,000 promissory note and the bankruptcy trustee may have been able to recover the $35,000 for the estate using her avoidance powers. The district court, however, never actually determined whether bankruptcy law would have allowed the trustee to recover the $35,000. Rather, the court found that Thad's failure to disclose the building sale deprived the trustee of the opportunity to investigate whether the $35,000 could be recovered, and that loss of opportunity was sufficient for the $35,000 to be included in the restitution order.

"The general rule is that a district court can award restitution to victims of the offense, but the restitution award can encompass only those losses that resulted directly from the offense for which the defendant was convicted." *United States v. Maturin*, 488 F.3d 657, 660–61 (5th Cir. 2007); *see also United States v. Arledge*, 553 F.3d 881, 899 (5th Cir. 2008) ("We have stated repeatedly that an order of restitution must be limited to losses caused by the specific conduct underlying the offense of conviction."). To include the $35,000 in the restitution order, the district court had to find that Thad's offense conduct—the failure to disclose the building sale—resulted in a loss of those funds by the bankruptcy estate. To do that, the court necessarily had to determine whether bankruptcy law would have allowed the trustee to avoid those transfers and recover the money for the estate. If the bankruptcy trustee could not have recovered the $35,000 even if Thad had disclosed the building sale, then Thad's offense conduct

No. 12-30457

did not cause the bankruptcy estate to lose those funds. By failing to determine whether the trustee could have recovered the $35,000 for the estate, the district court abused its discretion when it included that amount in the restitution order. *See Arledge*, 553 F.3d at 899. Accordingly, we vacate the restitution order (leaving the remainder of the sentence undisturbed) and remand for a recalculation of the amount of loss caused by Thad's offense conduct. *See Espinoza*, 677 F.3d at 734 n.22 (collecting cases where this court has vacated a restitution order while leaving the remainder of the sentence undisturbed).

## III.

We conclude that there was sufficient evidence presented at trial to support Thad and Theresa's convictions. We also affirm the district court's evidentiary rulings. However, we vacate the restitution order and remand for a recalculation of the loss to the bankruptcy estate caused by Thad's offense conduct. Accordingly, we AFFIRM in part, VACATE in part, and REMAND for further proceedings consistent with this opinion.