# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
April 21, 2021

Lyle W. Cayce
Clerk

No. 20-10350

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

CHAPMAN ROGERS MAYS,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:19-CR-350

Before KING, ELROD, and WILLETT, *Circuit Judges*.

PER CURIAM:[*]

Defendant-Appellant Chapman Rogers Mays was sentenced to an above-Guidelines sentence of sixty-months' imprisonment and ordered to pay $1,675,669.44 in restitution after pleading guilty to false bankruptcy declaration. On appeal, Mays argues that the factual basis was insufficient to support his guilty plea. Alternatively, he argues that his plea agreement is not

---

[*] Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

No. 20-10350

binding because the Government breached it; that in the absence of a valid plea agreement, the restitution amount was illegal; and that the district court's upward variance was substantively unreasonable. For the reasons that follow, we AFFIRM.

## I.

Defendant-Appellant Chapman Roger Mays was appointed under the Texas Uniform Transfers to Minors Act ("TUTMA"), Tex. Prop. Code § 141.004, as the custodian of his daughter's royalty-producing oil, gas, and mineral interests. Mays set up two bank accounts to facilitate the receipt of royalty payments. Over time, Mays misappropriated these funds by, *inter alia*, building a personal home and spending over $180,000 on travel. In total, Mays misappropriated over $1.8 million of his daughter's royalty payments.

During his appointment as custodian of his daughter's interests, Mays filed a voluntary bankruptcy petition in the U.S. Bankruptcy Court for the Northern District of Texas. Throughout these bankruptcy proceedings, Mays failed to disclose the existence of the two bank accounts where the royalty payments were deposited; he did not tell his daughter that he was using the funds; and he failed to disclose to the bankruptcy court that he had used funds in those accounts for his personal benefit.

Subsequently, as a result of his conduct, Mays was charged by information in the Northern District of Texas with one count of false bankruptcy declaration, in violation of 18 U.S.C. § 152(3). Mays waived indictment and pleaded guilty pursuant to a plea agreement. Therein, Mays agreed to pay restitution to his daughter for all losses resulting from his criminal conduct, and the Government agreed to sell the property seized in connection with these proceedings and to use the profits from the liquidation

toward the restitution amount. Mays also agreed "not to contest, challenge, or appeal in any way the government's disposal of the seized property."

At sentencing, the district court calculated Mays's advisory sentencing range under the Sentencing Guidelines as ten- to sixteen-months' imprisonment. But, after explaining its reasoning for doing so, the court varied upwards from the Guidelines range and imposed a statutory maximum sentence of sixty-months' imprisonment. The court also imposed three years of supervised release and ordered the payment of $1,675,669.44 in restitution. Mays timely appealed.

Mays argues on appeal that his guilty plea was unsupported by the proffered factual basis. In the alternative, he asserts that his plea agreement is not binding because the Government breached the agreement and that, in the absence of a valid plea agreement, the restitution amount was illegal. And, finally, Mays argues that the district court's upward variance was substantively unreasonable. We address each of these arguments in turn.

## II.

### A. *Proffered Factual Basis*

We turn first to Mays's argument that the factual basis for his guilty plea was insufficient.

As Mays did not raise this argument before the district court, our review is for plain error. *United States v. Ortiz*, 927 F.3d 868, 872 (5th Cir. 2019). To succeed on plain-error review, Mays must show (1) that the district court made an error (2) that is clear and obvious, and (3) affected his substantial rights. *United States v. Avalos-Sanchez*, 975 F.3d 436, 439 (5th Cir. 2020). Once he has shown as much, we still then have "discretion to correct the error and will do so only if 'the error seriously affects the fairness,

integrity, or public reputation of judicial proceedings.'" *Id.* at 439-40 (quoting *United States v. Marek*, 238 F.3d 310, 315 (5th Cir. 2001)).

Our first task under this framework is to determine whether the district court erred in accepting Mays's guilty plea, and, based on this record, we conclude that it did not.

Under Federal Rule of Criminal Procedure 11(b)(3), a district court taking a guilty plea must "make certain that the factual conduct admitted by the defendant is sufficient as a matter of law to establish a violation of the statute to which he entered his plea." *United States v. Trejo*, 610 F.3d 308, 313 (5th Cir. 2010) (emphasis omitted). The factual basis must satisfy each element of the crime of conviction. *Id.*; *see also Avalos-Sanchez*, 975 F.3d at 440. In reviewing the factual basis for plain error, we "may look beyond those facts admitted by the defendant during the plea colloquy and scan the entire record for facts supporting his conviction." *Ortiz*, 927 F.3d at 872-73 (quoting *Trejo*, 610 F.3d at 313).

Here, Mays pleaded guilty to false bankruptcy declaration under 18 U.S.C. § 152(3), which prohibits "knowingly and fraudulently mak[ing] a false declaration, certificate, verification, or statement under penalty of perjury . . . in or in relation to any case under title 11." The elements of the offense are as follows: "(1) there was a bankruptcy proceeding; (2) defendant made a declaration or statement under penalty of perjury in relation to the proceeding; (3) the declaration concerned a material fact; (4) the declaration was false; and (5) defendant made the declaration knowingly and fraudulently." *United States v. Grant*, 850 F.3d 209, 214 (5th Cir. 2017) (quoting *United States v. Spurlin*, 664 F.3d 954, 962 (5th Cir. 2011)).

At issue in this case is only whether the factual basis proffered was sufficient to establish that Mays made a false declaration for purposes of 18 U.S.C. § 152(3). Mays admitted before the district court that he failed to

No. 20-10350

disclose the two accounts and royalty payments in connection with the bankruptcy proceeding,[1] and that he did so knowingly and fraudulently. Nevertheless, Mays contends that the royalty payments he received as custodian of his daughter's property interests were not part of the bankruptcy estate, and so his failure to disclose them did not amount to a false declaration under the law.

18 U.S.C. § 152(3), the provision under which Mays was charged, broadly prohibits false statements in connection with a bankruptcy proceeding; the false statements need not concern the bankruptcy estate. This stands in stark contrast to other criminal bankruptcy statutes that explicitly refer to "the estate" or "the estate of a debtor."[2]

The focus of our inquiry, then, contrary to Mays's assertions, is not whether the royalty payments were ultimately part of the bankruptcy estate, but whether omitting them or any other information in connection with the bankruptcy proceeding amounted to a false statement. It did.

A debtor in a bankruptcy proceeding must file, among other things, "a schedule of assets and liabilities" and "a statement of the debtor's financial affairs" using the official forms prescribed by the Judicial Conference of the United States. 11 U.S.C. § 521(a)(1)(B)(i), (iii); FED. R. BANKR. P. 1007(b)(1)(A), (D), 9009(a). Mays did not list the royalty payments on either filing. He did this even though his receipt and use of the funds was directly

---

[1] Specifically, Mays admitted not only that he failed to list his daughter's royalties "as an asset on his bankruptcy schedules," but also, broadly, that he "did not disclose that he was continuing to collect and use [his daughter's] royalties for his own benefit."

[2] For example, 18 U.S.C. § 152(1) criminalizes the knowing and fraudulent concealment of "any property belonging to the estate of a debtor." Similarly, 18 U.S.C. § 152(4) prohibits the knowing and fraudulent presentation of false claims for proof against "the estate of a debtor."

pertinent to answering certain questions posed by Official Form 7, the statement of financial affairs form, which he signed under penalty of perjury. *See* Bankr. Petition at 34, *In re Mays*, No. 14-44898 (Bankr. N.D. Tex. Dec. 3, 2014).

Specifically, question 2 of Official Form 7 asked for income earned in the previous two years "other than from employment, trade, profession, or operation of the debtor's business." *See* Bankr. Petition at 34, *In re Mays*, No. 14-44898 (Bankr. N.D. Tex. Dec. 3, 2014) (listing as a response to the second question of Official Form 7, the "Statement of Financial Affairs," a $24,000.00 gift from his father and $500.00 in mineral income); *see also In re Crumley*, 428 B.R. 349, 360 (Bankr. N.D. Tex. 2010) (describing this same form and question). As the bankruptcy court in *In re Crumley* recognized, withdrawals from accounts for which the debtor is the custodian under TUTMA "fall within the expansive definition of income required by Question 2." 428 B.R. at 362.

Like Mays was for his daughter, in *Crumley*, the debtor was the custodian under TUTMA of two bank accounts for his minor children. *Id.* The debtor in *Crumley* used $38,500.00 from the accounts for living expenses and construction costs for a home he was building. *Id.* at 361-62. The bankruptcy court reasoned that to the extent the withdrawals were used for the benefit of the debtor's children, as authorized by TUTMA, the withdrawals were analogous to child support, which must be reported as income under Question 2. *Id.* at 362. And to the extent the withdrawals were not used for the benefit of the children, they were analogous to gifts, which also must be reported as income. *Id.* at 360-62. Hence, under Question 2, Mays was obligated to disclose his use of funds from his daughter's accounts as income. He failed to do so, and this omission amounts to a false statement under § 152(3). *See, e.g.*, *United States v. Theall*, 525 F. App'x 256, 265 (5th Cir. 2013) ("To obtain a conviction, the Government had to show that the

No. 20-10350

[defendants] 'knowingly and fraudulently' failed to disclose that information.") (citing to 18 U.S.C. § 152(3)).

Further, in Mays's amended Official Form 6D, particularly Schedule F inquiring about all creditors holding unsecured nonpriority claims, Mays stated that he was "custodian for [his] daughter's mineral trust" and that he "took [a] loan from [her] trust to pay for legal and household expenses." He stated that the loan totaled $55,000.00. Mays declared, under penalty of perjury, that the information contained in this form was true and correct. But as part of the factual resume supporting his plea, Mays admitted to having used his daughter's royalties for personal expenses totaling over $1.8 million. He admitted that he did not disclose that he controlled and used these funds in his creditor schedules. And his failure to list his daughter as an unsecured creditor as to the two accounts and the royalty payments he took had the effect of concealing from her the full extent of her claim against him. This omission amounts to a false statement under § 152(3). *See Theall*, 525 F. App'x at 265-66.

Because Mays failed to disclose royalty payments in his statement of financial affairs and in his unsecured creditor schedule, a sufficient factual basis existed to establish each element of the relevant offense, and the district court did not err in accepting his guilty plea.

B. *Validity of Plea Agreement*

Having established that Mays's guilty plea is valid, we turn to his argument that his plea agreement is not because the Government breached it by failing to make sure the proceeds from property it seized were deducted from the restitution amount in the judgment. Pursuant to a warrant, the Government seized an airplane, funds from various bank accounts, and several pieces of jewelry from Mays. Rather than pursue forfeiture of the

property, the Government agreed to apply the proceeds from its sale to Mays's restitution obligations.

But the Marshals Service did not conduct the sale of the property before Mays was sentenced, and at sentencing, the district court ordered Mays to pay $1,675,669.44 in restitution to his daughter, without making any concessions based on the value of the seized property.

On appeal, Mays contends that the Government was obligated to ensure that the value of the seized property was reflected in the judgment. As with his previous argument, Mays failed to object to the Government's breach before the district court, and so our review is again for plain error. *See United States v. Cluff*, 857 F.3d 292, 297 (5th Cir. 2017).[3]

Plea agreements are interpreted according to general principles of contract law. *Id.* at 298. In determining whether the Government breached the plea agreement, the inquiry is "whether the government's conduct is consistent with the defendant's reasonable understanding of the agreement." *Id.* (quoting *United States v. Pizzolato*, 655 F.3d 403, 409 (5th Cir. 2011)).

Under the plea agreement's plain terms, the parties merely agreed to apply the proceeds from the seized property to Mays's restitution obligation. The Government did not promise that the property would be sold before sentencing nor did it promise that the judgment would reflect the value of the property. The plea agreement cites *United States v. Messervey*, 182 F. App'x 318, 319 (5th Cir. 2006), and summarizes the opinion's holding as "affirming

---

[3] Although Mays "agree[d] not to contest, challenge, or appeal in any way the government's disposal of the seized property," appeal waivers do not bar claims that the Government breached a plea agreement. *United States v. Purser*, 747 F.3d 284, 289 (5th Cir. 2014). Mays's argument is thus properly before us.

order for property seized but not forfeit[ed] to be applied to judgment debt." In *Messervey*, the seized property was not scheduled to be sold until after the appeal became final. *Id.* at 320. On appeal, we rejected the petitioner's argument that the seized property should be returned due to the absence of a written agreement concerning restitution where the parties had agreed in open court to a post-judgment sale of the seized property to satisfy restitution. *Id.*

With the cite to *Messervey*, then, the plea agreement in this case reasonably contemplated that the seized property would be sold after the judgment was entered. Based on this and the plain terms of the plea agreement, "the government's conduct is consistent with the defendant's reasonable understanding of the agreement." *Pizzolato*, 655 F.3d at 409 (quoting *United States v. Elashyi*, 554 F.3d 480, 501 (5th Cir. 2008)). That is to say, Mays could not have reasonably understood the plea agreement as providing that the seized property would be applied to the restitution pre-judgment. *Cf. id.* at 409-10 (concluding that the reasonable understanding of a plea agreement was that the Government agreed only to a particular sentencing range and not a particular sentence and that the defendant "could not have reasonably understood the plea agreement as providing otherwise"). We can identify no "error or defect—[nor any] sort of '[d]eviation from a legal rule.'" *Puckett v. United States*, 556 U.S. 129, 135 (2009) (quoting *United States v. Olano*, 507 U.S. 725, 732-33 (1993)). All property that was seized can still be sold and the proceeds of that sale can still be applied in accordance with the plea agreement's terms. Therefore, the Government has not breached the plea agreement, and Mays's challenge to the district court's order of restitution, predicated on this alleged breach, fails.

## C. *Upward Variance*

At last, we turn to Mays's challenge of his sixty-month sentence as substantively unreasonable. Mays preserved this claim by arguing for a shorter sentence below, so review is for abuse of discretion.[4] *Holguin-Hernandez v. United States*, 140 S. Ct. 762, 766 (2020); *see also Gall v. United States*, 552 U.S. 38, 56 (2007).

We must first ensure that the district court's actions below did not amount to a "significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Gall*, 552 U.S. at 51.

If we conclude that the district court's determinations below were procedurally sound, we then consider the substantive reasonableness of the sentence imposed. In imposing a sentence, a district court must consider the factors listed in 18 U.S.C. § 3553(a). "A sentence is unreasonable when it (1) does not account for a factor that should have received significant weight, (2) gives significant weight to an irrelevant or improper factor, or (3) represents a clear error of judgment in balancing the sentencing factors." *United States v. Gutierrez*, 635 F.3d 148, 154 (5th Cir. 2011). Whether a sentence is reasonable depends on "the totality of the circumstances, including the extent of any variance from the Guidelines range." *Gall*, 552 U.S. at 51. "The farther a sentence varies from the applicable Guideline sentence, the more

---

[4] Because we conclude that the district court did not abuse its discretion in imposing a sixty-month sentence, we need not decide whether some of Mays's specific arguments might be subject to plain-error review. *See United States v. Holguin-Hernandez*, 955 F.3d 519, 520 n.1 (5th Cir. 2020).

No. 20-10350

compelling the justification based on factors in section 3553(a) must be." *United States v. McElwee*, 646 F.3d 328, 343 (5th Cir. 2011) (quoting *United States v. Smith*, 440 F.3d 704, 707 (5th Cir. 2006)). But, nevertheless, the district court's sentence, including its decision to vary, is owed significant deference. *Id.*; *Gutierrez*, 635 F.3d at 154.

To begin, it is clear that the district court's determinations below were procedurally sound. Mays argues, however, that his sentence was substantively unreasonable because the district court improperly considered uncharged conduct in varying upward "to provide just punishment for the offense" under § 3553(a). Specifically, Mays contends that his misappropriation of royalty payments from his daughter was not part of the false bankruptcy declaration "offense" as that term is used in § 3553(a) and therefore should not have factored into his sentence.

Even accepting Mays's characterization of the misappropriation of his child's funds as "uncharged conduct" as accurate—and we do not suggest that it is—the district court may consider uncharged conduct at sentencing, so long as there is a sufficient connection between said conduct and the charged offense. *See United States v. Newsom*, 508 F.3d 731, 735 (5th Cir. 2007) (discussing that the Guidelines allow a court to consider uncharged conduct that is at least "remote[ly] connect[ed]" with the offense of conviction for an "upward departure"); *see also* U.S. Sent'g Guidelines Manual § 1B1.1 cmt. n.1(I) (U.S. Sent'g Comm'n 2018) (defining "offense" as "the offense of conviction *and all relevant conduct* under § 1B1.3 (Relevant Conduct) unless a different meaning is specified or is otherwise clear from the context") (emphasis added). The papers accompanying the charging instrument in this case indicate that the charges were filed because Mays did not disclose the two accounts and royalty payments on his bankruptcy schedules and "did not disclose that he was continuing to collect and use [his daughter's] royalties for his own benefit." The connection between Mays's

No. 20-10350

misappropriation of funds and the offense to which he pleaded guilty—false bankruptcy declaration under 18 U.S.C. § 152(3)—is sufficient. The district court therefore did not abuse its discretion in considering Mays's misappropriation of funds from his daughter at sentencing.

Mays also argues that the district court abused its discretion by varying upward based on the need "to afford adequate deterrence to criminal conduct" under § 3553(a). Mays emphasizes that he has already been removed as custodian of his daughter's accounts and will be unable to misappropriate funds from her in the future. But Mays neglects to mention that after he was removed as custodian, he cashed an $8,900 check that should have been turned over to the new custodian—a fact that the district court specifically relied on as a reason to vary upward. Further, § 3553(a) considers general deterrence directed to the public at large, not just specific deterrence directed to the particular defendant. *United States v. Stafford*, 983 F.2d 25, 28 (5th Cir. 1993) (discussing the goals of sentencing); *see also* U.S. Sent'g Guidelines Manual ch. 4, pt. A, introductory cmt. (U.S. Sent'g Comm'n 2018) ("General deterrence of criminal conduct dictates that a clear message be sent to society that repeated criminal behavior will aggravate the need for punishment with each recurrence."). Therefore, the district court did not abuse its discretion in varying upward to achieve adequate deterrence.

## III.

For the foregoing reasons, we AFFIRM.