416 F.3d 163
 UNITED STATES of America, Appellee,
v.
Robert A. AMICO, Patrick J. McNamara, Joseph Shramek, Capitol Mortgage, John L. Dinuzzo, John J. Siciliano, Heidi Lieberman, Robert J. Amico, Richard N. Amico, Debra Gilliatt, Defendants,
Allan F. Peters, Defendant-Appellant.
 Docket No. 03-1435-CR.
 United States Court of Appeals, Second Circuit.
 Argued: September 27, 2004.
 Decided: July 26, 2005.
 
 Appeal from the United States District Court for the Western District of New York, Charles J. Siragusa, J.
 Bruce R. Bryan, Syracuse, NY, for Defendant-Appellant.
 Richard A. Resnick, Assistant United States Attorney, Western District of New York (Michael A. Battle, United States Attorney, on the brief), Rochester, NY, for Appellee.
 Before: WALKER, Chief Judge, LEVAL, KATZMANN, Circuit Judges.
 LEVAL, Circuit Judge.
 
 
 1
 Defendant-appellant Allan F. Peters appeals from a judgment of the United States District Court for the Western District of New York (Charles J. Siragusa, J.) convicting him, pursuant to his guilty plea, of mail fraud, under 18 U.S.C. § 1341; mortgage fraud, under 18 U.S.C. § 1014; and filing a false tax return, under 26 U.S.C. § 7206(1). Peters was sentenced principally to concurrent terms of imprisonment of forty-eight months, forty-eight months, and thirty-six months respectively. Peters contends on appeal that (1) the government breached the plea agreement by advocating for two-level sentencing enhancements for use of "sophisticated means" under U.S.S.G. § 2F1.1(b)(6)(C) (2000), and for "aggravating role" under U.S.S.G. § 3B1.1(c) (2000); (2) the sentencing court erred by imposing those enhancements; and (3) the court erred in following the United States Sentencing Guidelines, which unconstitutionally deprived the defendant of his right to a jury trial.
 
 BACKGROUND
 
 2
 Peters participated in a complex scheme to defraud federally insured banks and private mortgage lenders by using false information to obtain mortgages at inflated prices. In his role as a mortgage broker, Peters knowingly caused loan applications containing false information to be submitted to lenders. He also knowingly failed to report income on his tax returns and made material misrepresentations in his children's applications for college grants. On November 29, 2001, Peters pleaded guilty pursuant to a plea agreement.
 
 
 3
 In the plea agreement, Peters and the government agreed to the applicability of certain upward Guideline adjustments and, using the 2000 Sentencing Guidelines, to an adjusted offense level of 21. The government further agreed not to oppose a three-level downward adjustment for acceptance of responsibility, which, if granted, would reduce Peters's offense level to 18. The court accepted the plea.
 
 
 4
 The Presentence Report recommended two upward Guideline adjustments not discussed in the plea agreement: a two-level increase for sophisticated means under U.S.S.G. § 2F1.1(b)(6)(C), and a two-level increase for aggravating role under U.S.S.G. § 3B1.1(c). The court adopted these adjustments and granted a three-level downward adjustment for acceptance of responsibility, ultimately finding an offense level of 22, and sentencing within that range.
 
 DISCUSSION
 1. Alleged Breaches of the Plea Agreement
 
 5
 Peters first contends that the government breached its agreement as to the adjusted offense level when it filed a statement that it "adopts the findings of the revised Presentence Investigation Report." After Peters complained that the government's endorsement of these enhancements violated the agreement, the government filed an amended statement expressly declining to advocate for sophisticated means and aggravating role enhancements, and repeated that position several times thereafter. While we do not mean to imply that a retraction of an argument advanced by the government in violation of its plea agreement would always cure its breach, we conclude upon careful examination of all the circumstances, especially the mild, brief, and unassertive form of the statement and its rapid retraction, that the temporary breach was adequately cured.
 
 
 6
 Peters also contends the government breached the agreement by submitting a lengthy response to his objections to the Presentence Report. We disagree. In the plea agreement, the government reserved the right to "respond at sentencing to any statements made by the defendant or on the defendant's behalf that are inconsistent with the information and evidence available to the government." Furthermore, while the government had agreed to the adjusted Guideline range, nothing in the plea agreement barred the government from forcefully advocating for a sentence at the top of the range. The government was thus free to argue in a manner casting pejorative light on the defendant and his criminal activity. The factual portion of the government's filing falls squarely within its reservation of rights. The government disputed argumentative statements made by the defense (e.g., "mortgage brokers were not necessarily needed for the continuation of the fraud") with characterizations of its own (e.g., "the mortgage brokers were crucial to the success of the Amicos' scheme"). Peters opened the door to this response when he attempted to characterize the criminal scheme in a manner favorable to himself, minimized the importance to the criminal scheme of the mortgage brokers, and claimed not to have known supporting documentation accompanying the loan applications was false.
 
 
 7
 In addition, Peters challenges the propriety under the plea agreement of the government's discussion of the law governing sophisticated means and aggravating role enhancements. Peters's memo objecting to the enhancements proposed by the Presentence Report, not surprisingly, was slanted in favor of his position. It also omitted significant adverse authority. The government's memo in response filled in gaps left by Peters's memorandum of law, noted significant precedent, and explained the Guidelines provisions relating to sophisticated means and aggravating role. Although the precedent the government cited consisted primarily of cases supporting the enhancements, it also cited to a case in which we held that an aggravating role enhancement was not appropriate because the defendant did not control other participants in the criminal scheme. See United States v. Burgos, 324 F.3d 88, 92-93 (2d Cir.2003). The government prefaced its discussion, furthermore, by stating that "[t]he government is not advocating for such enhancements, as they were not contemplated in the plea agreement." Four more times over the course of five pages the government repeated that it was not advocating for the enhancements. We find that this discussion constituted an appropriate response to Peters's provocative arguments and that it fell within the bounds of the plea agreement.
 
 
 8
 We comment further on one aspect of the government's response to Peters's opposition to the two-level enhancement under § 3B1.1 for aggravating role, as recommended by the Presentence Report. The government's memo explained the range of adjustments provided by § 3B1.1 for aggravating role, including that, in circumstances where the criminal activity involved five or more participants "or was otherwise extensive," the Guideline calls for an increase of three or four levels, rather than two. The memo did not characterize Peters's conduct as warranting a three— or four-level adjustment, and did not advocate applying it to him. Indeed, immediately following the reference, it cautioned that the government was not advocating for any level of enhancement. Although Peters has not raised this contention, it is arguable that the very mention of the Guidelines provision calling for a more extreme adjustment than the two-level enhancement suggested by the Presentence Report constituted a breach of the plea agreement.
 
 
 9
 We reject the argument. In view of the defendant's inaccurate description of the law relating to aggravating role, the government was entitled to explain the law concerning this adjustment without violating its agreement. The sentencing court, moreover, apparently did not read this passage as advocating a three— or four-level enhancement, and never even considered imposing an aggravating role enhancement exceeding the two-level adjustment recommended in the Presentence Report.[1] We conclude that the government's correct description of the terms of the Guideline adjustment, undertaken as a proper response to exaggerated argumentation by the defendant, did not violate the agreement, even though the description referred to a more extreme provision of the enhancement than the one suggested in the Presentence Report.[2] Cf. United States v. Riera, 298 F.3d 128, 135-36 (2d Cir.2002).
 
 
 10
 Even if we were to conclude that this discussion should be considered a violation of the agreement, it was at worst a technical violation which had no consequence and should not require vacating the sentence. We recognize that this court recently explained in United States v. Vaval, 404 F.3d 144, 154 (2d Cir.2005), that "prejudice in the form of an increased sentence" need not be shown to obtain a remedy where the government has violated its plea agreement. We noted that "in order to preserve the integrity of plea bargaining procedures and public confidence in the criminal justice system, a defendant is generally entitled to the enforcement of a plea agreement without showing a tangible harm resulting from a breach." Id. at 155. At the same time, however, the Vaval opinion recognized a limited exception where the violation "does not cause the defendant to suffer any meaningful detriment" because the defendant's "reasonable expectations [were] fulfilled." Id.; see also Paradiso v. United States, 689 F.2d 28, 31 (2d Cir.1982) (per curiam). In this case, if we were to conclude that the mention of the three— or four-level enhancement technically violated the agreement, the violation would nonetheless fall within this exception.
 
 
 11
 This is best understood by contrasting our facts with those in Vaval. There the government had explicitly promised not to seek an upward departure and to "take no position concerning where within the Guidelines range . . . the sentence should fall." 404 F.3d at 149 (internal quotation marks omitted). Although the government claimed not to be taking a position forbidden by the plea agreement, at the very moment when the judge was focusing on the question whether to depart and where within the range to sentence the defendant, id. at 153, the government "volunteered highly negative characterizations of appellant's criminal history as `appalling' and his purported contrition as `disingenuous,'" id., asking the court "to consider all of that when making the Court's decision about where to sentence this defendant," id. at 150. These remarks were clearly designed to do exactly what the government had undertaken not to. The violation of the agreement was blatant. In addition, although the district court in Vaval said that it had not been influenced by the government's claims, it sentenced Vaval at the top of the Guidelines range, just as the government had improperly advocated. Id. at 151. Given these egregious facts, the government's breach had a high likelihood of undermining public confidence in the criminal justice system and fully justified the remand for resentencing before a different judge who had not been tainted by the improper argument, notwithstanding the sentencing judge's assertion that she was not influenced. Where the sentencing court has sentenced in accordance with a position improperly advocated, while claiming not to have been influenced by the improper advocacy, a reviewing court can do no more than speculate as to whether the judge was in fact influenced, even unconsciously.
 
 
 12
 Here we are faced with a very different situation. Given the argumentation rights the government did not surrender in the plea agreement, and the mild, non-provocative, merely informative, and substantially justified nature of its comment, if a violation were found, it would be a very close call, and a far cry from Vaval. Moreover, because the district court did not grant the three— or four-level enhancement mentioned by the government in its review of the terms of § 3B1.1, the conclusion that the government's remarks had no effect is not left to speculation. The facts of this case, even if found to involve a breach, would not threaten public confidence in the criminal justice system as in Vaval, and would not present the same need for a prophylactic remedy. While the Vaval court asserted that prejudice was "irrelevant to the need for a remedy," id. at 154, it expressly delineated an exception, as noted above, where the breach is minor and does not cause the defendant any meaningful detriment, so that in the end, the defendant's reasonable expectations have been fulfilled, id. at 155. The government's mention of the three-or four-level enhancement, even if found to be a breach, would fall within that exception.[3]
 
 2. Challenges to the Sentence
 
 13
 As for the defendant's objection to the court's application of the sophisticated means enhancement, U.S.S.G. § 2F1.1(b)(6)(C), there can be no doubt that the mortgage fraud scheme was highly complex. Peters's counsel conceded before the district court that the scheme involved sophisticated means designed to prevent detection. These included the creation of false bank documents; the solicitation and creation of false appraisals; the creation of false blueprints; submission of false blueprints to town officials in order to inflate the assessment of comparable home values; collusion with the attorney representing many of the purchasers at closing; and other tactics designed to conceal the scheme. Peters contends that, in applying the sophisticated means enhancement based on the actions of other participants in the scheme, without regard to whether Peters personally employed, or was aware of, the use of sophisticated means, the district court erred in relying on United States v. Lewis, 93 F.3d 1075 (2d Cir.1996), which involved a different Guidelines provision. He points to a ruling of the Sixth Circuit that the sophisticated means enhancement is not necessarily satisfied by the complexity of the scheme but "requires the sentencing court to look at the actions taken by the individual." United States v. Kraig, 99 F.3d 1361, 1371 (6th Cir.1996).
 
 
 14
 His argument in the abstract has some colorable merit. In Lewis, we described a sophisticated means enhancement in a different Guidelines provision relating to tax offenses, U.S.S.G. § 2T1.1(b)(2), as "an offense characteristic, not a characteristic of the individual defendant." Id. at 1084 (internal quotation marks omitted). This assertion rested in part on the government's vital interest in collecting taxes and the consequent need for a strong deterrent to the use of sophisticated tax fraud schemes which would make detection difficult and thus interfere with the process of tax collection. Id. The importance of tax collection seemingly outweighed the arguable unfairness of imposing a sizeable sentencing enhancement by reason of circumstances of which a defendant is unaware. Those considerations have no application to a Guideline covering the use of sophisticated means in an ordinary fraud unrelated to the effective functioning of government. Moreover, the broad rule announced in Lewis addressed a question not posed by the facts of that case. Lewis was not a case where the defendant was unaware of the sophistication of the scheme in which he was participating. The court implicitly distinguished him from an abettor who was ignorant of the use of sophisticated means by other participants, and found him "equally culpable as a defendant who independently developed a similar scheme," adding, "A defendant cannot escape punishment simply by contracting out to his accountants the dirty work of tax evasion." Id. at 1084.
 
 
 15
 We wonder whether our Circuit would adhere to the full breadth of the proposition asserted in Lewis, especially as applied to a different Guideline unrelated to the collection of taxes, if in fact confronted with a minor participant who had neither awareness nor notice of the use of sophisticated means by others in committing the offense.[4] We need not concern ourselves with the question of the minor participant without awareness or notice, however, because it does not concern Peters. The evidence indicates that Peters was well aware that sophisticated means were being used to conceal the scheme and was responsible for some of them. As an example, he recommended strategies involving selection of certain loan documentation to reduce the likelihood that lenders would obtain from the Internal Revenue Service copies of the borrowers' tax returns and thereby discover the fraud. We have no reason to doubt the sentencing judge would have applied the sophisticated means enhancement even if he believed the provision applied only to a defendant aware of the sophisticated means employed. We accordingly affirm the imposition of the two-level sophisticated means enhancement.
 
 
 16
 We reach a similar conclusion with respect to the two-level aggravating role enhancement. "To qualify for an adjustment under this section, the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants." U.S.S.G. § 3B1.1, cmt. n. 2 (2000). The district court found that Peters supervised at least one other participant in the mortgage fraud scheme, Heidi Lieberman. We see no flaw in this finding. Peters was the manager of his mortgage brokerage. He supervised Lieberman, who pleaded guilty to bank larceny, and directed her in carrying out the fraudulent transactions.
 
 
 17
 Peters failed to preserve his Sixth Amendment claim before the district court. We therefore review it for plain error. Cf. United States v. Fagans, 406 F.3d 138, 140-41 (2d Cir.2005). Peters has informed this Court that he seeks a remand in light of the Supreme Court's decision in United States v. Booker, ___ U.S. ___, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), and this Court's decision in United States v. Crosby, 397 F.3d 103 (2d Cir.2005). In accordance with Crosby, we remand for consideration of whether to resentence.
 
 
 18
 We have considered Peters's other arguments and find them to be without merit.
 
 CONCLUSION
 
 19
 With the exception of his Sixth Amendment challenge to sentencing under the Guidelines, we reject Peters's contentions. Remanded for further proceedings in conformity with Crosby.[5]
 
 
 
 Notes:
 
 
 [1]
 In his appellate brief, defendant mistakenly states that the district judge imposed a three-level enhancement for aggravating role. The error is understandable, because at one point during the sentencing colloquy the judge said that he was giving Peters a three-level enhancement for aggravating role. However, it is clear from context that the judge simply misspoke. The judge imposed the enhancement under § 3B1.1(c), which calls for a two-level enhancement, and in fact increased Peters's offense level by two. Had the judge actually imposed a three-level enhancement, Peters's offense level would have been 23, rather than 22
 
 
 [2]
 We do not mean to suggest that a government disclaimer, to the effect that it is not arguing for an adjustment where prohibited by its agreement from doing so, will necessarily protect it from a finding that its commentary constituted an argument and thus a breach of its agreementSee United States v. Vaval, 404 F.3d 144, 153 (2d Cir.2005). Such circumstances must be carefully studied in context, and where the government's commentary reasonably appears to seek to influence the court in a manner incompatible with the agreement, we will not hesitate to find a breach, notwithstanding formal language of disclaimer.
 
 
 [3]
 We do not readSantobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), or United States v. Carbone, 739 F.2d 45 (2d Cir.1984), as inconsistent with our conclusion. In Santobello, in exchange for a guilty plea, the prosecutor agreed to make no recommendation regarding defendant's sentence. 404 U.S. at 258, 92 S.Ct. 495. At sentencing, however, a prosecutor newly assigned to the case and apparently unaware of the government's promise recommended the maximum sentence, stressing the defendant's criminal record and connection with organized crime. Id. at 259, 92 S.Ct. 495. The violation of the plea agreement, although unintentional, was flagrant. The judge, while stating that he had not been influenced by the prosecutor's recommendation, sentenced Santobello to the maximum, exactly as the prosecutor had improperly urged. Id. at 259-60, 92 S.Ct. 495. The Supreme Court assumed that the judge in fact had not been influenced by the recommendation, but nevertheless vacated the sentence, emphasizing that the prosecutor's behavior threatened to undermine the entire plea bargaining process. Id. at 261-63, 92 S.Ct. 495. The Court, however, did not state a per se rule requiring resentencing in any case of prosecutorial breach of a plea agreement regardless of the extent of breach and of absence of prejudice. In the case before us, the alleged breach was technical at worst, and the judge did not impose the three— or four-level enhancement mentioned by the government. The government's conduct here does not pose the same sort of threat to the integrity of the plea bargaining process. On these very different facts, we see no reason to remand for resentencing.
 Carbone is similarly distinguishable. In Carbone, the government blatantly violated its promise not to recommend a sentence when it objected to defendant's request for a "split sentence" (part served in prison, part suspended and satisfied by a term of probation). 739 F.2d at 46. Moreover, the judge sentenced in accordance with the government's improper argument. Id. Finally, on appeal, the government exacerbated the offense, further undermining the value of its promise, by advancing the hypertechnical argument that in opposing split service of the sentence the court had just imposed, the government was not breaching its promise to "make no recommendation . . . as to the sentence which [the defendant] may be given," id. at 45 (internal quotation marks omitted), but was exercising its undiminished right to oppose modification of a sentence previously given, id. at 46-47. We remanded for resentencing before a different judge, saying it was "immaterial" whether the district judge was influenced by the prosecutor's objection. Id. at 47-48. But again, the decision did not announce a general rule. It was made on those facts—facts which severely threatened the integrity of the plea bargaining process. The facts of this case are very different and call for a different result. See similarly United States v. Corsentino, 685 F.2d 48 (2d Cir.1982).
 
 
 [4]
 The question has become somewhat less important as the result of the Supreme Court's ruling inUnited States v. Booker, ___ U.S. ___, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), that the Guidelines are advisory, rather than compulsory. Under that ruling, where it would be unfair to impose a sentencing enhancement by reason of the use of sophisticated means of which the defendant had no notice, the court would have more flexibility to diverge from the Guidelines.
 
 
 [5]
 Any appeal taken from the district court's decision on remand can be initiated only by filing a new notice of appealSee Fed. R.App. P. 3, 4(b). A party will not waive or forfeit any appropriate argument on remand or any appeal post-remand by not filing a petition for rehearing of this opinion.