**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

No. 12-20542

United States Court of Appeals
Fifth Circuit

**F I L E D**
March 25, 2014

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

CHRISTOPHER PURSER,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before HIGGINBOTHAM, OWEN, and HIGGINSON, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Christopher Purser pled guilty to a charge of conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349 and appeals his sentence on several grounds. The Government contends that he is barred from doing so because of an appeal waiver contained within his plea agreement. We enforce the appeal waiver and dismiss the appeal.

**I**

Christopher Purser was indicted for several finance-related crimes and ultimately pled guilty to Count One, which charged him with conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349. As part of his plea agreement, Purser agreed "to waive the right to appeal the sentence imposed or the manner in which it was determined." However, he reserved the right to

appeal a sentence above the statutory maximum or one resulting from either an upward departure or upward variance. In the plea agreement, he acknowledged that the district court had not yet determined his sentence, that his plea was not induced by any estimates of his possible sentencing range, and that the Government had not made "any promise or representation" concerning the sentence that he would receive.

In exchange, the Government agreed to (1) move to dismiss the remaining counts of the indictment; (2) not oppose Purser's request for a 2-level downward adjustment for acceptance of responsibility;[1] (3) request, if appropriate, an additional 1-level downward adjustment;[2] (4) not seek an upward departure or variance, and (5) recommend a sentence at the "low end of the Sentencing Guidelines." Finally, the Government agreed to the following conditions in Paragraph 13(f):

> The United States and the defendant will recommend to the Court and the United States Probation office that the following aspects of U.S.S.G. § 2B1.1 should apply:
> 1.  Base level offense is 7, as per U.S.S.G. § 2B1.1(a)(1);
> 2.  The Specific Offense Characteristic of § 2B1.1(b)(1)(J) applies;
> 3.  The Specific Offense Characteristic of § 2B1.1(b)(2)(B) applies;
> 4.  The Specific Offense Characteristic of § 2B1.1(b)(8)(C) applies; and
> 5.  The Specific Offense Characteristic of § 2B1.1(b)(9) applies.

But the Government specifically reserved, *inter alia*, its right to "set forth or dispute sentencing factors or facts material to sentencing."

---

[1] *See* U.S. SENTENCING GUIDELINES MANUAL § 3E1.1(a) (2011).

[2] *Id.* § 3E1.1(b).

The original PSR was made available on April 24, 2012. The original PSR had a total offense level of 37. The offense level was calculated using the base offense level of 7;[3] increased by 18 levels because the loss exceeded $2,500,000;[4] increased by 4 levels because there were more than 50, but less than 250, victims;[5] increased by 2 levels because the offense involved a violation of a prior judicial or administrative order;[6] increased by 2 levels because the scheme was relocated to another jurisdiction and partly committed outside the United States;[7] increased by 2 levels because Purser abused a position of trust;[8] and increased by 2 levels for obstruction of justice.[9] Combined with Purser's criminal history category of III, this yielded a Guidelines range of 262–327 months.

The Government initially objected that Purser should not have received a 4-level increase under § 2B1.1(b)(2)(B), but rather a 6-level increase under § 2B1.1(b)(2)(C), because the offense involved 250 or more victims. The Government subsequently withdrew this objection, noting that as part of the plea agreement it had agreed that § 2B1.1(b)(2)(B) was appropriate, and urged the application of the lesser enhancement. The Government also objected that Purser should have received a 4-level increase pursuant to § 3B1.1(a) because he was an organizer or leader of a criminal activity involving five or more participants.

---

[3] *Id.* § 2B1.1(a)(1).

[4] *Id.* § 2B1.1(b)(1)(J).

[5] *Id.* § 2B1.1(b)(2)(B).

[6] *Id.* § 2B1.1(b)(9)(C).

[7] *Id.* § 2B1.1(b)(10)(A); § 2B1.1(b)(10)(B).

[8] *Id.* § 3B1.3.

[9] *Id.* § 3C1.1.

Purser objected that he should have received a 2-level decrease under § 3B1.2 due to a minor role in the conspiracy. He also objected to the 2-level increase due to an abuse of a position of trust and the 2-level increase due to obstruction of justice.

The revised PSR responded to these objections. As to the § 2B1.1(b)(2)(B) and § 2B1.1(b)(2)(C) issue, the probation officer acknowledged that the Government withdrew its objection, but noted that the plea agreement only bound the Government and Purser. As a result, she recommended a 6-level increase anyway because the offense involved 250 or more victims—adding 2 levels from the previous 4-level increase. The probation officer also agreed with the Government and recommended a 4-level increase under § 3B1.1(a) because Purser was an organizer or leader—adding 4 more levels. The probation officer rejected Purser's proposed adjustment under § 3B1.2 for a minor role. She also rejected Purser's objection to the abuse of trust adjustment. But the probation officer did agree that the 2-level adjustment for obstruction of justice was inapplicable—subtracting 2 levels. Finally, she credited Purser with a 3-level acceptance of responsibility adjustment—subtracting another 3 levels. Therefore, the total offense level was 38.

Purser again objected: this time, to the 6-level increase under § 2B1.1(b)(2)(C) and the 4-level increase under § 3B1.1(a); he reasserted a claim to the minor role adjustment under § 3B1.2; and he renewed his objection to the abuse of trust adjustment. Purser argued that the Government had breached the plea agreement by recommending a § 2B1.1(b)(2)(C) adjustment, that its withdrawal of that recommendation was not sufficient to cure the breach, and that Purser was entitled to specific performance of the plea agreement. At the sentencing hearing, Purser also argued that the Government had breached an "implicit" commitment not to seek further adjustments outside of those specified in the plea agreement by arguing in favor of the § 3B1.1(a) enhancement. Finally, Purser filed a motion for downward variance arguing that his prison

exposure was twice that of his co-defendants, including Steve Mills, his former boss.

At the sentencing hearing, the district court rejected the minor role adjustment under § 3B1.2 that Purser sought. However, the court did sustain the objection to the abuse of trust adjustment—thus, reducing the offense level by 2 levels. As to the two theories of plea breach, the district court rejected both. With regard to the argument that the Government breached the plea agreement by initially seeking a 6-level § 2B1.1(b)(2)(C) enhancement—an enhancement the Government admitted it had mistakenly sought and now urged against at sentencing—the district court decided to err on the side of caution:

> THE COURT: All right. In order to avoid any argument that the Government breached the plea agreement by its initial objection to Paragraph 59, I'm going to rule that the enhancement for number of victims should be plus four.
>
> My concern is that the Government's original objection may have motivated closer scrutiny by the probation officer to the number of victims, although the addendum disavows that and says that the increase was based solely on the probation officer's own review of the evidence.
>
> I think in order to be absolutely careful, the increase for the number of victims will be plus four instead of plus six. That should eliminate any possible objection that the Government has breached the plea agreement by urging a greater number of victims.

Thus, the court applied the 4-level adjustment under § 2B1.1(b)(2)(B), not the 6-level adjustment under § 2B1.1(b)(2)(C)—reducing the offense level by another 2 levels. As for the argument that the Government breached the plea agreement by seeking a § 3B1.1(a) adjustment, the district court stated that "nothing in Paragraph 13(f) deals with an aggravating role adjustment." Accordingly, the court concluded that there was "no credible argument that the Government breached the plea agreement by requesting an increase for the Defendant's role

5

in the offense." The total offense level was now 34. The court sentenced Purser at the bottom of the applicable Guidelines range to 188 months of imprisonment. Finally, the court denied the motion for downward variance because it was "persuaded that the facts of this case do not justify a variance."

Purser timely filed a notice of appeal, and the present appeal follows.

## II

In his plea agreement, Purser "agree[d] to waive the right to appeal the sentence imposed or the manner in which it was determined." The plea agreement does allow him to appeal "a sentence imposed above the statutory maximum, any upward departure, or upward variance." However, since the present appeal does not fit within this narrow exception, the first question is whether the appeal waiver bars Purser's current appeal. At oral argument, the Government seemed to take the position that it would be willing to forgo the assertion of the appeal waiver clause, if this Court could reach the merits in its favor. However, in supplemental briefing submitted after the oral argument, it is clear that the Government is still asserting the appeal waiver.

Purser argues that the appeal waiver is void because of the Government breached the plea agreement. The Government argues that there was no breach.[10] An "alleged breach of a plea agreement may be raised despite a waiver

---

[10] The Government also responds in two other ways. First, the Government argues that the plea agreement was knowing and voluntary. A defendant may waive his right to appeal as part of a valid plea agreement if the waiver is knowing and voluntary. *United States v. McKinney*, 406 F.3d 744, 746 (5th Cir. 2005). Thus, to determine whether an appeal is barred by an appeal waiver provision in a plea agreement, we would usually consider whether the waiver (1) was knowing and voluntary and (2) applies to the circumstances at hand, based on the plain language of the agreement. *United States v. Bond*, 414 F.3d 542, 544 (5th Cir. 2005). During Purser's plea hearing, the district court reviewed the appeal waiver contained in the plea agreement, and Purser stated that he understood the waiver and agreed to it. He also stated that no one had threatened him or forced him to plead guilty. Indeed, in his briefs, Purser does not contend that his plea was unknowing or involuntary. Second, the Government also argues that the appeal does not fit within the narrow exception of challenging the adequacy of the factual basis of the conviction. "[A] valid waiver of appeal does not bar review of a claim that the factual basis for a guilty plea fails to establish the essential elements of the crime of conviction." *United States v. Trejo*, 610 F.3d 308, 312–13 (5th Cir. 2010). But, in his

provision."[11] Thus, we can properly reach the first question of whether the Government breached the plea agreement during the course of the proceedings below.

Whether the Government has breached a plea agreement is a question of law that this Court reviews de novo.[12] As the Supreme Court has made clear, "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled."[13] In deciding whether the Government violated a plea agreement, this Court considers "whether the Government's conduct was consistent with the defendant's reasonable understanding of the agreement."[14] The plea agreement is construed strictly against the Government as drafter of the agreement.[15] The defendant has the burden of demonstrating the underlying facts that establish the breach by a preponderance of the evidence.[16]

Purser argues that the Government breached the plea agreement in two ways. First, the Government explicitly breached the plea agreement when it objected that § 2B1.1(b)(2)(C) should have applied. Second, the Government implicitly breached the plea agreement when it argued that the 4-level organizer

---

briefs, Purser does not claim that he is attacking the factual basis for the guilty plea. Therefore, the Government's points are well-taken. But neither goes to the heart of the matter. Purser's argument is neither that the plea was not knowing or voluntary nor that the factual basis is inadequate. Rather he argues that there was a breach of the plea agreement.

[11] *United States v. Pizzolato*, 655 F.3d 403, 409 (5th Cir. 2011) (internal quotation marks omitted) (citation omitted). Indeed, when the Government breaches a plea agreement, the defendant is "necessarily released from an appeal waiver provision contained therein." *United States v. Gonzalez*, 309 F.3d 882, 886 (5th Cir. 2002).

[12] *United States v. Munoz*, 408 F.3d 222, 226 (5th Cir. 2005).

[13] *Santobello v. New York*, 404 U.S. 257, 262 (1971).

[14] *Munoz*, 408 F.3d at 226 (internal quotation marks omitted) (citation omitted).

[15] *United States v. Elashyi*, 554 F.3d 480, 501 (5th Cir. 2008).

[16] *United States v. Roberts*, 624 F.3d 241, 246 (5th Cir. 2010).

or leader adjustment under § 3B1.1(a), which was not mentioned in the plea agreement, should have applied.

Purser's first theory of plea agreement breach relies on the fact that the Government initially objected and argued that a 6-level increase under § 2B1.1(b)(2)(C) should have applied, rather than the 4-level increase under § 2B1.1(b)(2)(B). Under the plea agreement, the Government had agreed to the 4-level increase. Purser acknowledges that the Government withdrew its objection, but nevertheless contends that the initial instance of the breach voided the appeal waiver notwithstanding the withdrawal. The Government responds in several ways. First, to its eyes, the objection and the withdrawal viewed together do not constitute a breach. Second, the Government argues that any breach was harmless because the district court specifically stated that it would follow the plea agreement recommendation of a 4-level increase under § 2B1.1(b)(2)(B), not the 6-level increase recommended by the revised PSR. Third, the Government argues that even if the objection is viewed as a breach, that breach was later cured by the withdrawal of the objection.

Purser's argument that a breach initially occurred succeeds. The defendant's reasonable understanding of the agreement was that the Government would recommend to the district court and the probation officer that § 2B1.1(b)(2)(B) would apply and that it would not deviate from that recommendation. By initially advocating for the higher adjustment found in § 2B1.1(b)(2)(C), the Government contradicted the express language found in the plea agreement. As a result, Purser was deprived of the benefit for which he bargained: namely, that the Government would present a united front that § 2B1.1(b)(2)(B) applied.[17] We do not agree with the Government's contention

---

[17] *Cf. United States v. Grandinetti*, 564 F.2d 723, 726 (5th Cir. 1977) ("[T]he defendant offers his plea not in exchange for the actual sentence or impact on the judge, but for the prosecutor's statements in court. If these statements are not adequate (as opposed to successful), then the agreement has not been fulfilled.").

that the episode viewed in its entirety does not constitute a breach. When the Government acts contrary to the express terms of the plea agreement, it has breached the plea agreement.[18] Similarly, we do not find our prior precedent distinguishable on the grounds that in those cases the breach took place at the sentencing hearing itself,[19] whereas here the breach occurred before the hearing. The plea agreement's express language states that the Government would "recommend to the Court and the United States Probation office" the agreed upon conditions. Therefore, it is of no moment that the Government breached the plea agreement before the sentencing hearing, because the Government still breached the express terms of the plea agreement.

Next, we turn to the Government's contention that the objection was ultimately harmless since it withdrew the objection and the district court took special notice of the problematic nature of the objection. Indeed, it was in order to avoid any arguments about plea agreement breach, that the district court imposed the § 2B1.1(b)(2)(B) enhancement. Whether harmlessness plays any role where, as here, the defendant has objected to a breach of the plea agreement and preserved the issue is a question of some complexity.

To begin, in *Santobello v. New York*,[20] the Supreme Court clarified that the essential inquiry does not focus on the harmlessness of the breach of a plea agreement. In *Santobello*, while the original prosecutor had agreed not to make any sentencing recommendation as part of the plea agreement,[21] the new

---

[18] *United States v. Saling*, 205 F.3d 764, 767 (5th Cir. 2000) (finding a breach where "the prosecutor's statements to the trial judge blatantly violated the plea agreement's express terms").

[19] *See id.* at 766 (breach occurred at the sentencing hearing); *Munoz*, 408 F.3d at 225 (same).

[20] 404 U.S. 257 (1971).

[21] *Id.* at 258.

prosecutor recommended the maximum sentence at the sentencing hearing.[22] The sentencing judge chose to sentence the defendant to the maximum sentence, and in doing so, declared that he was not affected in any way by the new prosecutor's breach of the plea agreement.[23] The Supreme Court acknowledged that it had "no reason to doubt" this assurance.[24] But the Supreme Court refused to reach the question of whether the sentencing judge was influenced by the plea agreement and its subsequent breach.[25] Instead, the Supreme Court vacated the conviction and remanded the case in order to serve "the interests of justice and [in] appropriate recognition of the duties of the prosecution in relation to promises made in the negotiation of pleas of guilty."[26] In other words, the occurrence of the breach itself was enough to lead to vacatur of the judgment, notwithstanding a harmlessness analysis.

We have previously read *Santobello* to foreclose a harmlessness inquiry. In *United States v. Valencia*,[27] we were faced with an argument that harmless error analysis should apply in the case of a preserved objection to a plea agreement breach.[28] However, we rejected the attempt to impose a harmless error inquiry where an objection about plea agreement breach has been preserved:

> The interests of justice and standards of good faith in negotiating plea bargains require reversal where a plea bargain is breached. A lesser standard would permit

---

[22] *Id.* at 259.

[23] *Id.*

[24] *Id.* at 262.

[25] *Id.* at 262–63.

[26] *Id.* at 262.

[27] 985 F.2d 758 (5th Cir. 1993).

[28] *Id.* at 761.

the government to make a plea bargain attractive to a defendant, subsequently violate the agreement and then argue harmless error, thereby defrauding the defendant.[29]

We have continued to reject the imposition of a harmless error inquiry in our other cases since *Valencia*.[30] Our decision in *United States v. Hooten*[31] is not to the contrary. In that case, we found that the government had not breached the plea agreement.[32] Although we stated that even if we had found a breach, such a finding would "not automatically require resentencing,"[33] this was dicta and not part of the holding of that case.

Most of our sister circuits have similarly rejected the use of a harmlessness inquiry in situations of a plea agreement breach where the error has been preserved.[34] We do note that many of these circuits have also adopted a mitigating doctrine that stands in some contrast to the no-harmlessness doctrine. Under this mitigating doctrine, there is a harmlessness inquiry only

---

[29] *Id.* (citation omitted).

[30] *See United States v. Keresztury*, 293 F.3d 750, 756 (5th Cir. 2002) ("[T]he government appears to be proposing some kind of harmless error excuse. . . . [We] reject this attempt by the government to excuse its action as harmless."); *Saling*, 205 F.3d at 766–67 ("If a breach has in fact occurred, the sentence must be vacated without regard to whether the judge was influenced by the government's actions.").

[31] 942 F.2d 878 (5th Cir. 1991).

[32] *Id.* at 884.

[33] *Id.* (quoting *United States v. Brody*, 808 F.2d 944, 948 (2d Cir. 1986)).

[34] *United States v. Clark*, 55 F.3d 9, 13–14 (1st Cir. 1995); *United States v. Vaval*, 404 F.3d 144, 154–55 (2d Cir. 2005); *United States v. Martin*, 788 F.2d 184, 187 (3d Cir. 1986); *United States v. King*, Nos. 91-5338, 91-5339, 1992 WL 75161, at *2 (4th Cir. Apr. 16, 1992) (per curiam); *United States v. Askew*, No. 97-6278, 1999 WL 236187, at *2 (6th Cir. Apr. 14, 1999) (per curiam); *United States v. Diaz-Jimenez*, 622 F.3d 692, 694–97 (7th Cir. 2010); *United States v. Alcala-Sanchez*, 666 F.3d 571, 577 (9th Cir. 2012); *United States v. VanDam*, 493 F.3d 1194, 1202 (10th Cir. 2007); *United States v. Hallock*, 530 F. App'x 875, 882 (11th Cir. 2013) (per curiam). *But see United States v. E.V.*, 500 F.3d 747, 754–55 & 755 n.13 (8th Cir. 2007) (adopting a harmlessness inquiry).

in cases where there is a material breach of the plea agreement.[35] In other words, minor breaches do not count. We similarly once held that a breach of a plea agreement was immaterial.[36] However, since the breach in this case cannot be characterized as immaterial, this mitigating doctrine does not apply.

Finally, most recently in *Puckett v. United States*,[37] the Supreme Court was faced with a breach of a plea agreement to which the defendant had not objected at the district court.[38] The Supreme Court held that this was a case of a forfeited error,[39] and as a result, held that plain error review was the appropriate standard.[40] Obviously, that is not the case here where Purser clearly objected to the breach of the plea agreement and preserved the error. But *Puckett*'s assessment of *Santobello* is instructive. According to *Puckett*, "*Santobello* did hold that automatic reversal is warranted when objection to the Government's breach of a plea agreement has been preserved."[41] But the Supreme Court clarified that this rule was not due to the fact that a plea agreement breach is a structural error—which are not *susceptible* or *amenable* to harmless error analysis—but rather because of a "policy interest in establishing the trust between defendants and prosecutors that is necessary to sustain plea bargaining—an 'essential' and 'highly desirable' part of the criminal

---

[35] *Clark*, 55 F.3d at 13 n.3; *Vaval*, 404 F.3d at 155; *Diaz-Jimenez*, 622 F.3d at 694–97; *VanDam*, 493 F.3d at 1202 & n.5.

[36] *United States v. MacInnis*, No. 94-20627, 1995 WL 371137, at *5 (5th Cir. June 7, 1995) (per curiam).

[37] 556 U.S. 129 (2009).

[38] *Id.* at 131.

[39] *Id.* at 138.

[40] *Id.* at 143.

[41] *Id.* at 141.

12

process."[42] In a footnote, the majority opinion explicitly refused to confront the question of whether *Santobello*'s "automatic-reversal rule has survived [the Supreme Court's] recent elaboration of harmless-error principles."[43] Therefore, *Puckett* reads *Santobello* as, at least currently, foreclosing any harmless error analysis of a plea agreement breach. Therefore, we cannot agree that harmlessness plays any role in the inquiry where as here there has been a breach of the plea agreement and the objection to that breach was properly preserved.

We agree with the Government's contention that the breach of the plea agreement was adequately cured in this case. While we have previously rejected arguments that the government successfully cured a plea agreement breach,[44] some of our sister courts have allowed for the curing of a plea agreement breach.[45] Indeed, even the Supreme Court has opined that "*some* breaches may be curable upon timely objection—for example, where the prosecution simply forgot its commitment and is willing to adhere to the [plea] agreement."[46] Cure

---

[42] *Id.* (quoting *Santobello*, 404 U.S. at 261–62).

[43] *Id.* at 141 n.3.

[44] *United States v. Munoz*, 408 F.3d 222, 227–28 (5th Cir. 2005) (holding that the government's effort at curing the breach "amounted to little more than lip service to the plea agreement and did not rectify the breach"); *cf. United States v. Carter*, No. 02-20175, 2003 WL 147728, at \*3 (5th Cir. Jan. 7, 2003) (rejecting the government's attempt to cure a breach of the plea agreement). We do not disturb *Munoz*'s holding that an equivocal or half-hearted recantation may be inadequate to cure a breach.

[45] *See, e.g.*, *United States v. Amico*, 416 F.3d 163, 165 (2d Cir. 2005) (holding that a retraction of an argument that violated the plea agreement cured the breach where the violation "mild, brief, and unassertive" and the retraction was "rapid"); *see also Diaz-Jimenez*, 622 F.3d at 695–96. *But see United States v. Santibanez-Hernandez*, 532 F. App'x 339, 340–41 (4th Cir. 2013); *Alcala-Sanchez*, 666 F.3d at 576–77.

[46] *Puckett*, 556 U.S. at 140. The *Puckett* Court reasoned that applying plain error review to forfeited errors involving plea agreement breaches would encourage objections at the district court level. *Id.* This would prevent gaming of the system and allow for the creating of a factual record, facilitating appellate review. *Id.* It would also allow curable breaches to be cured in the district court. *Id.* And if the breach were uncurable, it would allow the district court to "grant an immediate remedy (*e.g.*, withdrawal of the plea or resentencing before a different judge)

13

and harmless error stand on different footing from each other. Cure, unlike harmless error, is the removal of legal defect or correction of legal error; that is, performance of the contract.[47] Simply put, with a cure of breach, the government abides by the plea agreement, while harmless error excuses a lapse of government performance. Allowing the government to cure a plea agreement breach vindicates the "policy interest in establishing the trust between defendants and prosecutors that is necessary to sustain plea bargaining."[48] Here, the Government cured its breach by withdrawing its objection and urging the application of the lesser enhancement, both prior to and at sentencing, and the district court subsequently acted consistently with the plea agreement. Even though the revised PSR recommended that § 2B1.1(b)(2)(C) should apply, the district court specifically applied § 2B1.1(b)(2)(B) in order to cure the breach. Purser's argument that the breach also led to the imposition of a 4-level leadership adjustment pursuant to § 3B1.1(a) fails to persuade. Nothing in the plea agreement prevented the Government from providing information to the probation officer or district court about the § 3B1.1(a) adjustment.

Purser's second theory of plea agreement breach involves an implicit and uncured breach. Purser argues that the Government implicitly breached the plea agreement by urging the application of the 4-level organizer or leader adjustment under § 3B1.1(a), which was not mentioned in the plea agreement. Paragraph 13(f) of the plea agreement only deals with "aspects of U.S.S.G. § 2B1.1," and the plea agreement has nothing to say about the rest of the Guidelines. Moreover, there was no provision in the plea agreement regarding

---

and thus avoid the delay and expense of a full appeal." *Id.*

[47] *See* Black's Law Dictionary 439 (9th ed. 2009).

[48] *Puckett*, 556 U.S. at 141.

the total offense level.[49] Therefore, we find no implicit commitment on part of the Government as to any Guidelines provisions not mentioned in the plea agreement, such as § 3B1.1(a). The district court was correct in rejecting this theory of plea agreement breach as well.

Therefore, Purser's arguments about plea agreement breach fail.

### III

We find that Purser is correct that the Government initially breached the express terms of the plea agreement by objecting to the original PSR on the basis that § 2B1.1(b)(2)(C) should have applied. However, this breach was sufficiently cured by the withdrawal and the actions of the district court. In concluding so, we do not retreat from the principle that the government must honor its plea agreements. Nor do we step on *Puckett*'s recognition of the policy interest necessary for plea bargaining, namely the trust between defendants and prosecutors—an interest resting on the reality that 97% of federal criminal convictions are the result of pleas of guilty.[50] With the adoption of the Sentencing Guidelines, plea bargaining now lies at the center of the adversarial contest. Next, we find that the Government did not implicitly breach the plea agreement by advocating for the § 3B1.1(a) adjustment. As a result, we find that the appeal waiver is still applicable and bars Purser's appeal. We DISMISS the appeal.

---

[49] *Munoz*, 408 F.3d at 225–27 (finding a plea agreement breach because there was an implicit promise not to argue for an enhancement not in the plea agreement—a plea agreement that contained a provision as to the total offense level).

[50] *Missouri v. Frye*, 132 S. Ct. 1399, 1407 (2012).